UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DOT COM ENTERTAINMENT GROUP, INC.,                **DECISION**
                                                                              **and**
                                            Plaintiff,                **ORDER**

            v.
                                                                    **04-CV-0383A(F)**
THE CYBERBINGO CORPORATION,
ESCAPE TECHNOLOGIES,
GONZALO GOMEZ, and
JOSE PEREZ PARADES,

                                            Defendants.

_____

APPEARANCES:              HODGSON RUSS LLP
                                      Attorneys for Plaintiff
                                      ROBERT J. LANE, JR., and
                                      CATHERINE GRANTIER COOLEY, of Counsel
                                      One M&T Plaza, Suite 2000
                                      Buffalo, New York  14203

                                      MICHAEL JASON LEE, ESQ.
                                      Attorney for The Cyberbingo Corporation
                                        and Gonzalo Gomez
                                      15281 Normandie Avenue
                                      Irvine, California  92604

                                      NIXON PEABODY LLP
                                      Attorneys for The Cyberbingo Corporation
                                        and Gonzalo Gomez
                                      SUSAN C. RONEY, of Counsel
                                      1600 Main Place Tower
                                      Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned by Honorable Richard J. Arcara on

January 21, 2005, for all pretrial motions.  The matter is presently before the court on

Plaintiff's motion for leave to effect service on Defendants Escape Technologies and

Jose Perez Parades by an alternative method (Doc. No. 19), filed November 5, 2005.

**BACKGROUND**

Plaintiff Dot Com Entertainment Group, Inc. ("Plaintiff" or "DCEG"), commenced this action on May 21, 2004, alleging causes of action under 35 U.S.C. § 1, *et seq.*, for patent infringement, inducement of infringement, and contributory infringement against Defendants The Cyberbingo Corporation ("Cyberbingo"), Gonzalo Gomez ("Gomez"), Escape Technologies ("Escape"), and Jose Perez Parades ("Parades").  In particular, Plaintiff, who is the owner by assignment of United States Patent No. 6,585,590 ("the '590 Patent"), entitled "METHOD AND SYSTEM FOR OPERATING A BINGO GAME ON THE INTERNET," issued by the United States Patent and Trademark Office on July 1, 2003, maintains that until February 4, 2002, Cyberbingo licensed the use of the '590 Patent though a licensing arrangement with dot com (antigua) Ltd., a subsidiary of DCEG ("the Licensing Agreement").  Complaint ¶¶ 9, 16.  Plaintiff further alleges that Cyberbingo and Escape infringed the '590 Patent by developing similar software technologies for an Internet bingo game, which were then promoted and offered for license by players who would have otherwise licensed the use of the '590 Patent. Complaint ¶¶ 15-16.

Defendants Cyberbingo and Gomez ("Served Defendants") were served with a summons and complaint in this action.  However, Defendants Escape and Parades ("Unserved Defendants") have yet to be served despite Plaintiff's several attempts at service by different methods at different addresses.  As such, on November 4, 2005, Plaintiff filed the instant motion seeking leave to serve the summons and Complaint on Defendants Escape and Parades by an alternative method, in particular, by substitute service on Michael Jason Lee, Esq. ("Lee"), who represents Served Defendants

Cyberbingo and Gomez in this action.  According to Plaintiff, Escape is an affiliate of Cyberbingo and has provided Cyberbingo with software which Cyberbingo used in the alleged infringing activities underlying this action.  Complaint ¶ 12.  Plaintiff thus maintains that given the apparent relationship between Cyberbingo and Escape, service on Lee would be sufficient to comply with the constitutional due process requirement that the service method selected by reasonably calculated to provide notice of the pending action and an opportunity to respond.  The motion is supported the Declaration of Catherine Grantier Cooley, Esq. (Doc. No. 20) ("Cooley Declaration"), attached to which are Plaintiff's Exhibits A through G ("Plaintiff's Exh. __"), and the Memorandum of Law in Support of Plaintiff's Motion for Leave to Serve Process by an Alternate Method (Doc. No. 21) ("Plaintiff's Memorandum").

In opposition to the motion, Served Defendants Cyberbingo and Gomez filed on December 2, 2005, the Declaration of Michael Jason Lee, Esq. (Doc. No. 29) ("Lee Declaration"), attached to which are Defendants' Exhibits 1 through 3 ("Defendants' Exh. __"), and Defendants The Cyberbingo Corporation's and Gonzalo Gomez's Memorandum of Law in Opposition to Plaintiff's Motion for Leave to Serve Process by Alternate Method (Doc. No. 30) ("Served Defendants' Memorandum").  On December 9, 2005, Plaintiff filed in further support of the motion the Reply Memorandum in Further Support of Plaintiff's Motion for Leave to Serve Process by an Alternate Method (Doc. No. 33) ("Plaintiff's Reply Memorandum"), the Supplemental Declaration of Catherine Grantier Cooley, Esq. (Doc. No. 34) ("Supplemental Cooley Declaration"), attached to which are Plaintiff's Supplemental Exhibits A through C ("Plaintiff's Supplemental Exh. __"), and Process Server Michael Ross Lee Porubovic's Affidavit of Attempted Service

(Doc. No. 35) ("Porubovic Affidavit"), with Exhibit A attached ("Porubovic Affidavit Exh. A").  Oral argument was deemed unnecessary.

Based on the following, Plaintiff's motion (Doc. No. 19) is GRANTED as to the request for leave to effect service on Defendants Escape Technologies and Jose Perez Parades by an alternative method, and is DENIED as to the request for an award of costs, including attorney fees, incurred by Plaintiff in connection with this motion.

## FACTS[1]

DCEG is a domestic corporation organized under Florida law with its principal office located at 300 Delaware Avenue, Buffalo, New York.  Both Defendants Cyberbingo and Escape are foreign corporations organized under the laws of Antigua with their principal offices located at Gambles Medical Centre, Unit # 8, Friars Hill Road, St. John's, Antigua.  Cyberbingo's corporate purpose is "[t]o conduct the business of international betting and bookmaking permitted by the laws of Antigua and Bermuda." Cooley Declaration Exh. B.  Escape's corporate purpose is "[t]o own software and to conduct any and all business activities permitted by the laws of the States of Antigua and Bermuda other than International Banking, Trust, Insurance, Betting or Bookmaking or any other activity which requires a license under the International Business Corporations Act."  Cooley Declaration Exh. B.  Defendant Gomez, who resides at Hodges Bay, St. John's, Antigua, is licensed pursuant to Regulation 74 of the Interactive Gaming and Interactive Wagering Regulations, to operate as Cyberbingo's

---

[1] The Facts statement is taken from the pleadings and motion papers filed in this action.

Key Person and, as such, is authorized by the Financial Services Regulatory Commission of the Government of Antigua to direct and control Cyberbingo's activities. Defendant Parades, who maintains a residence at Jolly Harbour, St. Mary's, Antigua, and whose permanent address is in Spain, is Escape's sole director and, as such, directs and controls all of Escape's activities.

Although Cyberbingo and Gomez were served with a summons and the Complaint, Plaintiff has been unable to effect service on Defendants Escape and Parades.  Plaintiff explains that on June 1, 2004, Plaintiff sent pursuant to Fed.R.Civ.P. 4(d), Notices of Lawsuit and Request for Waiver of Service of Summons to Parades at Jolly Harbor, St. Mary's, Antigua, and at Gambles Medical Center, Unit # 8, Friars Hill Road, St. John's, Antigua, and to Escape, to the attention of Parades, at Gambles Medical Center, Unit # 8, Friars Hill Road, St. John's, Antigua.  Cooley Declaration ¶¶ 4-5.  As of July 1, 2004, no responses to the notices had been received from either Parades or Escape.  *Id*. ¶ 6.  On July 30, 2004, Plaintiff, pursuant to Fed. R. Civ. P. 4(f)(1) and the Hague Convention, forwarded to the Registrar of the High Court of Antigua Requests for Service Abroad of Judicial or Extrajudicial Documents, seeking service of the summons and complaint on all four Defendants.

In November 2004, Cooley was contacted by Lee who advised he represented the Served Defendants in this action, but when Cooley asked whether he also represented the Unserved Defendants, Lee responded he did not believe Escape was a real entity or that Parades was a real person, but that he would look into the matter. Complaint ¶ 8. As of December 2004, the High Court of Antigua had not returned Plaintiff's service on any of the four Defendants, but DCEG had learned that Parades

had a residence in Nepean, Ottawa, Canada and a Canadian process server was retained to attempt to effect service on Parades at 7 Winding Way, Nepean, Ottawa, Canada; the service attempt, however, was unsuccessful.  On January 18, 2005, the Served Defendants appeared and filed an answer by their counsel, Lee.

Plaintiff subsequently learned that Parades, when traveling in the Ottawa, Canada area, usually resided with his father-in-law, Phillip Smith ("Smith"), at 83 Forest Creek Drive, Stittsville, Ontario.  Porubovic Affidavit ¶ 2.  Porubovic, a self-employed Canadian Process Server, was hired by Plaintiff to serve Parades with the Complaint at Smith's Stittsville, Ontario residence ("the Smith residence").  *Id*. ¶ 1-2.  Porubovic's first attempt to serve Parades at the Smith residence was on March 12, 2005, at which time Porubovic spoke with Smith who acknowledged that "Jose Perez Parades" would return to the Smith residence at some unknown time, and also advised that Parades maintains residences in London, England, Madrid, Spain, and Antigua.  *Id*. ¶ 4.  Porubovic was further informed that Parades "traveled incessantly" and Porubovic was left to chance at finding Parades at the Smith residence.  *Id*. ¶ 5.  In total, Porubovic made 12 unsuccessful attempts to serve Parades at the Smith residence, including on March 12 and 19, 2005, April 4 and 18, 2005, June 18 and 19, 2005, July 5 and 14, 2005, August 10 and 11, 2005, September 23, 2005 and October 3, 2005, each time speaking with Smith, Smith's housekeeper, or Smith's wife's nurse, all of whom were unable to specify when Parades was likely to return to that address.  *Id*. ¶¶ 5, 8.

Initial disclosures served, pursuant to Fed.R.Civ.P. 26(a)(1) ("Rule 26(a)(1)"), by the Served Defendants on June 10, 2005, the Served Defendants identify one "Jose Perez" as a potential witness who is "employed by or under the control of [Cyberbingo]

and may be contacted through counsel." Cooley Declaration ¶ 12 (referencing

Plaintiff's Exh. G, p. 2). In light of such disclosure, Cooley, by letter to Lee dated July 6,

2005 ("Cooley July 6, 2005 Letter") (Defendants' Exh. 1), inquired as to whether

Parades could be contacted through Lee as counsel, requesting Lee advise as to

whether he would accept service of process for Parades, both individually and as

Escape's director. Cooley Declaration ¶ 13. Cooley further advised that if Lee did not

respond to her request by July 16, 2005, Plainitff would move for an order permitting

service by an alternative method, specifically, service by an alternative method upon

Lee based on Lee's "apparent ability to control and contact both Mr. Perez and Escape

Technologies." Cooley July 6, 2005 Letter.

On July 26, 2005, DCEG served a First Set of Interrogatories ("Interrogatories")

and a Request for Production and Inspection of Documents ("Document Requests")

(together "Discovery Demands") on the Served Defendants, seeking information and

documents reflecting or referring to Cyberbingo's corporate structure, including its

officers, directors, managing agents, parent or affiliate entities and divisions, and

Cyberspace shareholders. Supplemental Cooley Declaration ¶ 3. On October 28,

2005, the Served Defendants served objections and responses to the DCEG's

Discovery Demands, which contain answers that do not deny the existence of any

relationship between the Served and Unserved Defendants. *See* Plaintiff's Exh. A

("Served Defendants' Objections and Responses to Plaintiff's Interrogatories,") and

Plaintiff's Exh. B ("Served Defendants' Objections and Responses to Plaintiff's

Document Requests"). On November 22, 2005, the Served Defendants served

Supplemental Objections and Responses to Plaintiff's Interrogatories, Plaintiff's Exh. C,

in which the Served Defendants again failed to deny having any information regarding Escape's corporate organization.

## DISCUSSION

DCEG argues in support of its motion that it has made several unsuccessful attempts to serve Parades and Escape through various means, but has been unable to effect service.  Plaintiff's Memorandum at 3.  DCEG further argues that sufficient evidence in the record establishes that Mr. Lee is able to contact Parades, who is Escape's sole director, through Gomez and, as such, service on Mr. Lee would both reasonably apprise Parades and Escape of the pendency of the instant action, as well as provide Parades and Escape with an opportunity to respond, in accordance with constitutional due process requirements.  *Id*. at 3-4.

Mr. Lee objects to the motion on the basis that he does not know anyone named "Jose Perez Parades" and, although one "Jose Perez" was identified in the Served Defendants' Rule 26(a)(1) initial disclosures as a potential witness on behalf of the Served Defendants, Lee has never represented Perez, and can only reach Perez through a third person.  Lee Declaration ¶¶ 3-6.  Lee also maintains that Escape is an inactive corporation, has no knowledge that Escape ever conducted business, has no contact with any persons at Escape, and does not and never has represented Escape in any capacity.  Lee Declaration ¶¶ 8-9.  Lee also characterizes as insufficient DCEG's attempts to effect service on Parades and Escape.  Lee Declaration ¶¶ 10-11.  Lee further maintains that Cooley has misrepresented that Lee has been unresponsive to her requests for assistance in effecting service on Escape and Parades, asserted that

8

he left voice mail messages and sent e-mail messages in response to letters received from Ms. Cooley inquiring as to whether Cooley had resolved the issue and to which Cooley never responded.  Lee Declaration ¶¶ 12-18.

In further support of the motion, DCEG submits an affidavit from its Canadian process server, Michael Ross Lee Porubovic, detailing a dozen attempts to effect personal service on Parades at Parades's father-in-law's residence in Ontario, Canada, between March 12, 2005 and October 3, 2005.  Porubovic Affidavit; *see* Plaintiff's Reply Memorandum at 2-3.  DCEG further points to several of the Served Defendants' responses to its Discovery Demands in which the Served Defendants either are evasive in responding to questions regarding the relationship between Cyberbingo, Gomez, Parades and Escape, or fail to deny, on behalf of Cyberbingo and Gomez, any connection to Parades and Escape.  Plaintiff's Reply Memorandum at 3-5; Supplemental Cooley Declaration ¶¶ 1-6.  For example, in response to Plaintiff's Interrogatory 2, seeking the identity of the directors, officers, managing agents, subsidiaries, parents, affiliates and divisions of both Cyberbingo and Escape, the Served Defendants failed to assert an inability to respond to the Interrogatory insofar as it requests information pertaining to Escape but, rather, responded they would "produce documents from which information responsive to this interrogatory may be derived." Plaintiff's Exh. A, Interrogatory Response # 2.

Initially, the court observes that neither the Served Defendants nor Mr. Lee have standing to challenge DCEG's motion for leave to effect service on Parades and Escape by an alternative method.  *See Cooper v. Church of Scientology of Boston, Inc.*, 92 F.R.D. 783, 785 (D. Mass. 1982) (holding defendant church, on which substitute

9

service was ordered for an unlocated defendant, although found to have acted as agent of the unlocated defendant, was without standing to challenge court order for substitute service on the unlocated defendant).  *See also Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1017-18 (9th Cir. 2002) (upholding substituted service upon defendant's appeal of default judgment entered against defendant following such service upon defendant).  As such, the court considers the motion papers only to determine whether DCEG has met its burden of establishing, under the requirements of Rule 4(f), that an alternative method of service is necessary and that substitute service on Mr. Lee, on behalf of the Unserved Defendants, would satisfy constitutional due process.[2]

It is axiomatic that "'[a] fundamental requisite of due process of law is the opportunity to be heard.'"  *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950) (quoting *Grannis v. Ordean*, 234 U.S. 385, 394 (1914) ("And it is to this end, of course, that summons or equivalent notice is employed.")).  The Constitution does not require any particular means of service of process and "[p]ersonal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents."  *Mullane*, *supra*, at 314.  Rather, "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford

---

[2] By letter filed December 29, 2005 (Doc. No.41), the Served Defendants requested permission to file as a sur-reply in further opposition to the instant motion an additional declaration by Mr. Lee further "clarifying the relationship" between the Served Defendants, and Parades and Escape, along with a supplemental response to Plaintiff's Interrogatory No. 11 which specifically requests such information. Because the Served Defendants and Mr. Lee are, however, without standing to challenge the instant motion, the Served Defendants' request for permission to file a sur-reply is DISMISSED as moot.

them an opportunity to present their objections." *Id*. (citing *Milliken v. Meyer*, 311 U.S. 457 (1941); *Grannis*, *supra*; *Priest v. Board of Trustees of Town of Las Vegas*, 232 U.S. 604 (1914); and *Roller v. Holly*, 176 U.S. 398 (1900)).  Constitutional due process requirements will be met provided the notice is "of such nature as reasonably to convey the required information," and "afford[s] a reasonable time for those interested to make their appearance." *Mullane*, *supra*, (citing cases).  Although "process which is a mere gesture is not due process . . . . [t]he reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id*. at 314-15 (citing cases).

Service upon individuals residing in a foreign country is governed by Fed. R. Civ. P. 4(f) which enumerates three methods for effecting such service, including by any "means not prohibited by international agreement as may be directed by the court." Fed. R. Civ. P. 4(f)(3).  In the instant case, DCEG seeks to effect "court-ordered" service upon Escape and Parades pursuant to Rule 4(f)(3) by substitute service on Mr. Lee as the attorney for Escape and Parades.

Rule 4(f)(3) court-ordered service is particularly useful to courts when encountering elusive international defendants, including those seeking to evade service of process.  *See Rio Properties, Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1018 (9th Cir. 2002) (justifying alternative court-ordered service where the plaintiff was "faced with an international e-business scofflaw, playing hide-and-seek with the federal court.").  The

alternative methods of service authorized by court order include "publication, ordinary mail, mail to the defendant's last known address, delivery to the defendant's attorney, telex, and most recently, email." *Rio Properties, Inc.*, *supra*, at 1016 (citing cases).

Furthermore, Rule 4(f)(3) provides "an independent basis for service of process and is neither 'extraordinary relief,' nor a 'last resort' to be used only when parties are unable to effectuate service under [other provisions for service upon individuals in foreign countries.]" *Ryan v. Brunswick Corporation*, 2002 WL 1628933, * 2 (W.D.N.Y. May 31, 2002). A party "need not have attempted every permissible means of service of process before petitioning the court for alternative relief." *Rio Properties, Inc.*, *supra*, at 1014. Nevertheless, as a district court may, in the exercise of the discretionary power afforded under Rule 4(f)(3), impose a threshold requirement to be met prior to seeking a court order directing service by alternative means, so as "to prevent parties from whimsically seeking alternative means of service and thereby increasing the workload of the courts," the threshold requirement is met where the party seeking relief shows that it has reasonably attempted to effectuate service on the defendant and "the circumstances are such that the district court's intervention is necessary to obviate the need to undertake methods of service that are unduly burdensome or that are untried but likely futile." *Ryan*, *supra*, at *2 (citing Wright & Miller, FEDERAL PRACTICE & PROCEDURE: CIVIL 2d § 1134 (1990)).

In the instant case, DCEG describes in detail its numerous attempts to serve Parades and Escape, including mailing, on July 1, 2004, notices requesting waiver of service of summons ("waiver request notices") to two addresses for Parades, including his residence in St. Mary's Antigua and Escape's business office in St. John's, Antigua,

and to Escape at its business address in St. John's, Antigua.[3]  Plaintiff's Memorandum

at 3; Cooley Declaration ¶¶ 3-6; Plaintiff's Exhs. C and D.  Plaintiff explained that it

found the addresses through a search of the Companies Registry in Antigua.  Cooley

Declaration ¶ 3; Plaintiff's Exh. B.  Plaintiff never received any response to any of the

notices requesting waiver.  Plaintiff's Memorandum at 3; Cooley Declaration ¶ 6.[4]

Plaintiff next attempted to serve Parades and Escape pursuant to Fed. R. Civ. P.

4(f)(1) and the Hague Convention on the Service Abroad of Judicial and Extrajudicial

Documents ("the Hague Convention"), by forwarding, on July 30, 2004, to the Registrar

of the High Court of Antigua Requests for Service Abroad of Judicial or Extrajudicial

Documents.[5]  Cooley Declaration ¶ 7; Plaintiff's Exh. E.  As of December 2004,[6] the

High Court of Antigua had yet to return service of the summons and Complaint as to

<u>any</u> of the four Defendants.  Cooley Declaration ¶ 9.  Nevertheless, in November 2004,[7]

Mr. Lee contacted Ms. Cooley and advised he represented both Cyberspace and

Gomez in the instant action.  Cooley Declaration ¶ 8.  Cooley then inquired whether Lee

---

[3] Plaintiff also served Defendants Gomez and Cyberbingo with waiver request notices.  Plaintiff's
Reply Memorandum at 2 n. 2.

[4] Defendants Gomez and Cyberbingo also failed to respond to the waiver request notices.
Plaintiff's Reply Memorandum at 2 n. 2.  Further, although not specifically stated in the record, Plaintiff's
assertion that it never received any response to any of the waiver request notices mailed to any of the
Defendants implies that none of the mailings were returned to Plaintiff either as undeliverable or bearing
any stamp indicating the intended recipient was no longer at the listed address.

[5] As both Antigua and the United States of America are signatories to the Hague Convention, see
U.S. Dep't of State Circular on Service of Legal Documents Abroad, *available at*
http://www.travel.state.gov/law/info/judicial/judicial_680.html (listing countries that are parties to the Hague
Convention), service pursuant to those means authorized by the Hague Convention is provided for under
Fed. R. Civ. P. 4(f)(1).

[6] No specific date in December 2004 is given.

[7] The precise date that Mr. Lee contacted Ms. Cooley is not specified.

also represented Parades and Escape, to which Lee responded he did not believe

Escape was a real entity or the Parades was a real person, but that Lee would look into

the status of both Escape and Parades and "get back to" Cooley.  Cooley Declaration ¶

8.  Mr. Lee never contacted Ms. Cooley with any further information regarding Escape

or Parades; however, on January 18, 2005, Cyberbingo and Gomez appeared and filed

an answer by counsel, including Mr. Lee.  Cooley Declaration ¶ 11.

Meanwhile, in December 2004, DCEG learned that Parades had a residence in

Nepean, Ottawa, Canada and a process server was retained to serve Parades at his

Ottawa residence, both individually and as Escape's director.  Cooley Declaration ¶¶ 9-

10.  After DCEG failed to effect service on Parades at the Ottawa address, DCEG

made a dozen unsuccessful attempts to serve Parades at his father-in-law's residence

in Stittsville, Ontario.  Significantly, neither the Served Defendants nor Mr. Lee

challenge any of the attempts as service as alleged by DCEG.   Moreover, the court

finds that DCEG, by such attempts, has satisfied its burden of reasonably attempting to

effect service on Parades and Escape, but that "the circumstances are such that the

district court's intervention is necessary to obviate the need to undertake methods of

service that are unduly burdensome or that are untried but likely futile."  *Ryan*, *supra*, at

*2.

Lee also asserts that allowing substitute service on him would not comply with

the Constitutional requirement of reasonably likely to apprise Parades and Escape of

the pendency of the instant action given that Lee does not personally know Parades,

and has never represented Parades.  However, inconsistent positions taken by Lee on

this point undermines his credibility regarding his knowledge of Escape and Parades.

In particular, Lee states that he does not know "anybody by the name of Jose Perez Parades," and, "[a]s a logical extension, [Lee has] never met or spoken to an individual that **goes by the name Jose Perez Parades**.  Lee Declaration ¶ 3 (emphasis added).  Lee acknowledges being "aware of person by the name of Jose Perez Paradis," ("Paradis"), but claims he has never met, spoken to and has no contact with Paradis.  Lee Declaration ¶ 4.  Lee also asserts that the "Jose Perez" identified by Cyberbingo and Gomez in their Rule 26(a)(1) Initial Disclosures as a potential witness ("Perez") "is a separate and distinct person from Jose Perez Paradis."  Lee Declaration ¶ 5.  Lee further states that he has never represented Perez, that it is Lee's understanding that Perez "resides outside of the [unspecified] country," and that Lee can only reach Perez "through a third party."  Lee Declaration ¶ 5.

Of glaring significance throughout Lee's explanation, however, is that Lee never asserts that he ever inquired, either directly or through a third party, whether Perez is, in fact, Parades, but happens to "go by the name" Perez, rather than by Parades.  That Perez, according to Lee, "resides outside the country" is consistent with Plaintiff's assertion that a search performed by Offshore Company Services Limited of the Companies Registry in Antigua shows Parades resides in Spain, and is also consistent with process server Porubovic's assertion that Parades maintains residences in London, England, Madrid, Spain, and Antigua, and that, when traveling in Ottawa, Canada area, Parades normally resides with his father-in-law, Phillip Smith, in Stittsville, Ontario.  Porubovic Affidavit ¶¶ 2-4.  Nor has Lee submitted an affidavit from Gomez asserting that Perez is not Parades.  Additionally, neither Lee nor Gomez submits anything explaining how Cyberbingo and Escapes share the same business address,

15

yet are completely unrelated and separate such that service on Lee, who represents Gomez and Cyberbingo in this action, could not reasonably be expected to apprise Parades and Escape of the pendency of the instant action so as to permit Parades and Escape an opportunity to respond.

Furthermore, the Served Defendants' responses to Plaintiff's Discovery Demands seeking information pertaining to the Unserved Defendants, or to the relationship between the Served and Unserved Defendants are, at best, evasive.  In particular, in response to Interrogatory 2, seeking the identity of the directors, officers, managing agents, subsidiaries, parents, affiliates and divisions of both Cyberbingo and Escape, the Served Defendants responded they would "produce documents from which information responsive to this interrogatory may be derived," but did not claim to be unable to respond to the Interrogatory insofar as it requests information pertaining to Escape.   Plaintiff's Exh. A, Interrogatory Response # 2.  The Served Defendants objected to Interrogatories Nos. 3, 4, 5, 6, 7, 8, 9, and 10, insofar as such Interrogatories "seek[ ] information concerning Escape and Parades."  Plaintiff's Exh. A, Interrogatory Response No. 3, 4, 5, 6, 7, 8, 9, and 10.  As to Interrogatory No. 11, requesting Defendants "[s]et forth the relationship between Cyberbingo, Escape, Gomez and Perez," the Served Defendants, rather than denying the existence of any such relationship, objected on grounds of vagueness, overbreadth and undue burdensome, and stated they "will produce documents from which information responsive to this Interrogatory may be derived or ascertained."  Plaintiff's Exh. A, Interrogatory Response No. 11.  The Served Defendants later supplemented their responses to Plaintiff's Interrogatories by identifying Gomez as Cyberbingo's only

corporate director, Plaintiff's Exh. C, Supplemental Interrogatory Response No. 2, yet again failed to deny any relation between Cyberbingo and Escape.

The Served Defendants gave responses to Plaintiff's Document Requests that were also evasive as to the relationship between the Served Defendants and the Unserved Defendants.  In particular, in response to Document Request No. 2, requesting documents "identifying each of Escape's or Cyberbingo's directors, officers, managing agents, subsidiaries, parents, affiliates, divisions, and shareholders," the Served Defendants objected on the grounds of overbreadth, undue burdensome and relevancy, but do not claim an inability to respond insofar as the request seeks information pertaining to the Unserved Defendants.  Plaintiff's Exh. B, Document Request Response No. 2.  Document Request No. 11 seeks "[a]ll documents reflecting or referring to any communications among Cyberbingo, Gomez, Escape and Perez relating to DCEG or the '590 Patent," to which the Served Defendants make general objections, but do not deny that any communications occurred among the Served and the Unserved Defendants.  Plaintiff's Exh. B, Document Request Response No. 11. Plaintiff's Document Request No. 12 seeks "Escapes's and Cyberbingo's minute books and stock transfer ledgers or other documents reflecting or relating to ownership or control of Cyberbingo and Escape, including any agreements among the defendants relating or referring to ownership or control of Cyberbingo and Escape," to which the Served Defendants again make general objections, but do not deny knowledge insofar as information pertaining to Escape is sought.  Plaintiff's Exh. B, Document Request Response No. 12.  As such, for Mr. Lee to now assert he has no knowledge of, or any means to contact either Escapes or Parades, strains credulity.

Nor is there any merit to the Served Defendants' attempt to distinguish the instant case from *Rio Properties, Inc.*, *supra*; *Santos v. State Farm Fire and Casualty Company*, 902 F.2d 1092 (2d Cir. 1990), and *Federal Home Loan Mortgage Corporation v. Mirchandani*, 1996 WL 534821 (E.D.N.Y. Sept. 18, 1996), on the basis that in those cases substitute service on the defendant's attorney was permitted only because the attorney was already performing tasks for the client "beyond the typical scope of the attorney-client relationship" when such service was authorized.  Served Defendants' Memorandum at 1-2.  Specifically, *Rio Properties, Inc.*, *supra*, did not concern the propriety of court-ordered substitute service on a defendant's attorney under Rule 4(f)(3), but, rather, whether the district court had abused its Rule 4(f)(3) discretion by ordering service by regular mail and e-mail after initial attempts to effect service on defendant's attorney, who was not authorized to accept service on defendant's behalf and without obtaining a court order authorizing such service, had failed.  *Rio Properties, Inc.*, *supra*, at 1012-13. Similarly, in *Santos*, *supra*, and *Mirchandani*, *supra*, service on a defendant's attorney was held insufficient to confer personal jurisdiction over the defendants given that in both cases, the respective defendants had not authorized their attorneys to accept service, and there was no court order pursuant to Rule 4(f)(3) directing such service.  *Santos*, *supra*, at 1094 ("service of process on an attorney not authorized to accept service for his client is ineffective"); *Mirchandani*, *supra*, at *4 ("Generally, service upon an individual's attorney is not sufficient to confer personal jurisdiction.").[8]  Accordingly, as the validity of court-ordered

---

[8] The court notes that in *Mirchandani*, *supra*, the court stated in *dicta* that "where the circumstances indicate that an individual performs tasks for the client beyond the typical attorney-client

substitute service on a defendant's attorney was not at issue in any of the cases cited

by the Served Defendants, the holdings of such cases are inapplicable to the instant

case.

The court finds, based on the record, DCEG has demonstrated that court-

ordered substitute service on Mr. Lee, on behalf of Parades and Escape, is reasonably

likely to apprise both Parades and Escape with notice of the pendency of the instant

action and to permit Parades and Escape ample opportunity to respond.  As such,

DCEG's motion for leave to effect service on Defendants Parades and Escape by an

alternative method, *e.g.*, by service on Mr. Lee, is GRANTED.

DCEG also seeks an award of costs, including attorney fees, incurred in

connection with the instant motion, but cites no authority in support of such request.

Notice of Motion (Doc. No. 19).  Defendants have not responded to this request.

Fed. R. Civ. P. 4(d)(2) specifically provides that

> [i]f *a defendant located within the United States* fails to comply with a request for
> waiver [of service of process] made by the plaintiff located within the United
> States, the court shall impose the costs subsequently incurred in effecting
> service on the defendant unless good cause for the failure be shown.

Fed. R. Civ. P. 4(d)(2) (italics added).

Further,

> [t]he costs to be imposed on a defendant under paragraph (2) for failure to
> comply with a request to waive service of a summons shall include the costs
> subsequently incurred in effecting service under subdivision (e), (f), or (h),
> together with the costs, including a reasonable attorney's fee, of any motion

---

relationship, there may be *implied* authorization for service upon the individual's attorney." *Mirchandani*, *supra*, at *4-5 (italics added) (citing *Olympus Corp. v. Dealer Sales & Service, Inc.*, 107 F.R.D. 300, 306 (E.D.N.Y. 1985)).

required to collect the costs of service.

Fed. R. Civ. P. 4(d)(5).

Here, the instant motion is necessitated, in part, by the fact that the Unserved Defendants refused to comply with DCEG's request that service of process by waived. However, Rule 4(d)(2)'s cost of service shifting provision, by its terms, applies only to defendants located within the United States and, as such, the provision cannot apply to either Parades or Escape, neither of whom, based on the instant record, is located in the United States.  See Fed. R. Civ. P. 4(d)(2) 1993 Advisory Committee notes ("It should be noted that the provisions for shifting the costs of service apply only if the plaintiff and the defendant are both located in the United States, and accordingly a foreign defendant need not show 'good cause' for its failure to waive service.").  As such, DCEG's request for an award of costs, including attorney fees incurred in connection with this motion, is DENIED pursuant to Rule 4(d)(2).

## <u>CONCLUSION</u>

Based on the foregoing, Plaintiff's motion (Doc. No. 19) is GRANTED as to the request for leave to effect service on Defendants Escape Technologies and Jose Perez Parades by an alternative method, and is DENIED as to the request for an award of costs, including attorney fees, incurred in connection with the motion.  Pursuant to Fed. R. Civ. P. 4(m), Plaintiff's time within which to effect service upon the Unserved Defendants is enlarged and such alternative service shall be made upon Michael Jason Lee, Esq., <u>within 30 days</u> of service of this Decision and Order.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:        December <u>29</u>, 2005
                      Buffalo, New York